| 34 | 227 |
|----|-----|
| 67 | 346 |
| 34 | 227 |
| 81 | 62 |
| o81 | 63 |

In the matter of the proceedings by the St. Paul & Northern Pacific Railway Company to acquire for its uses certain lands in Hennepin county.

## November 4, 1885.

Condemnation Proceedings — Appeal — Order appointing Commissioners.—An order appointing commissioners in condemnation proceedings in pursuance of Gen. St. 1878, c. 34, § 17, is a final order in a special proceeding, and is appealable.

Same—Petition for Com'rs—Question of Public Use and Necessity.— Upon such application it is for the court to determine whether the use for which lands are sought to be appropriated is a public use, and whether they are reasonably required or necessary therefor.

Same — Whether Company shall be allowed to Prosecute its Enterprise.—It is not considered in this case whether the court is also authorized to determine whether a railway corporation, organized in pursuance of Gen. St. c. 34, title 1, may be permitted to proceed with the enterprise and exercise the power of eminent domain, since it is held that the record herein discloses a *prima facie* case supporting the determination of the court that the public interests require the prosecution of the enterprise

Same — Lots held by State University, but not for Public Use. — Town lots belonging to or held in trust for the University of the State of Minnesota, but not set apart or occupied for public purposes, may be acquired by condemnation proceedings as in the case of the lands of private persons or corporations.

Same — Hearing of Petition — Lands not included in Petition, and the Owners thereof, not to be Considered.—For the purposes of the petition in such cases, separate and independent lots or parcels of land, not described nor included in the proposed improvement, are not to be deemed affected by the condemnation proceedings so as to entitle the

owners thereof to appear and object to the propriety of granting such petition. Nor can a party, some of whose lands are taken, raise an issue as to other outside lots or parcels of his own not described, in respect to alleged injuries incident to the operation of a proposed railroad.

The St. Paul & Northern Pacific Railway Company having presented its petition, under Gen. St. 1878, c. 34, § 14, to the district court for Hennepin county, asking to condemn certain lands therein described, the state appeared and filed an answer, putting in issue the power of the petitioner to condemn, denying that the public use or necessity required the prosecution of the enterprise of the petitioner, and alleging that certain lots described in the petition as belonging to certain individuals therein named were held in trust for, and belonged to, the University of Minnesota, and that the proposed lines of the petitioner are located in such close proximity to the buildings and campus of the university that the construction and operation of the railroad, if permitted, will be very largely, if not entirely, destructive of the usefulness of such buildings and campus for the purposes of the university, and will necessitate the removal thereof to some other locality, at very great cost and expense.

Upon the hearing before *Young* and *Koon,* JJ., the petitioner introduced evidence to show the nature and extent of its enterprise, and also to show that the interests of the public required the prosecution thereof. The state offered evidence to prove that the line of petitioner's railway, if constructed where located, will impair the usefulness of the university, interfere with the process of education, make it impossible to erect certain scientific buildings, such as astronomical observatories and chemical laboratories, which it is designed to erect and which are necessary for the purposes of the university, and that, by reason of the construction and operation of the railway along that line, the university cannot perform its public functions. On the petitioner's objection this evidence was excluded. A motion by the state to dismiss the proceedings was denied, and an order was made appointing commissioners to ascertain and determine the amount to be paid as compensation for taking or injuriously affecting the lands described in the petition. From this order the state appeals.

*William J. Hahn*, Attorney General, for the State.

The motion to dismiss the petition because it was not made to appear that the public interests required the prosecution of the enterprise should have been granted. The burden of showing this fact was on the petitioner. *In re N. Y. Cent. R. Co.*, 66 N. Y. 407; *Wis. Cent. R. Co.* v. *Cornell University*, 52 Wis. 537. There was no evidence to establish it. The only witness examined was the company's engineer, and his testimony was confined to the location of the road and the amount of money expended thereon.

The court erred in not receiving the evidence offered by the state to show that the university would be injured by the location and operation of the road. Under the statute it was a question for the court to determine whether the public interests require the prosecution of the enterprise. For the purposes of this appeal, all that the state offered to prove must be taken as true. The statute provides that any one whose interests are affected may show cause against granting the prayer of the petition. Laws 1879, c. 35.

*D. A. Secombe*, for respondent.

VANDERBURGH, J.   This is an appeal from an order of the district court of Hennepin county appointing commissioners to appraise damages upon the petition of the respondent railway company, in pursuance of Gen. St. 1878, c. 34, § 17.

1. Such order is a final order in a special proceeding, and hence appealable. Among other things it determined that the lands proposed to be taken were required and necessary for the proposed improvement. The question so determined would not again arise or be considered in the course of any subsequent proceedings, but was determined once for all, and affected a substantial right. *In re Jones*, 33 Minn. 405.

2. Upon the merits, the first question arises upon the motion of the appellant, the state of Minnesota, to dismiss the petition on the ground that it was not made to appear that the public interests required the prosecution of the enterprise. The controversy grows out of the attempt by the company to appropriate certain lands belonging to the University of Minnesota, situated on the line of the proposed route of the road. The only lands, however, included in the petition

which appear to belong to the university are certain lots in Regents' addition to Minneapolis. These lots are not used or held for public purposes by the state, and are not contiguous to the university grounds, and are liable to be appropriated in the same manner as lands of private persons. Gen. St. 1878, c. 34, § 15. No good reason, therefore, appears why they might not be taken for public use by the railway company if reasonably necessary therefor. And the necessity or propriety of appropriating these particular lots does not seem to be questioned, if the enterprise is to proceed. The court, it appears, upon the hearing of the petition, was satisfied that the public interests required the prosecution of the enterprise, and we think there was a sufficient *prima facie* case made to sustain such determination. The court was entitled to consider the nature of the enterprise as disclosed by the record, the location, *termini*, and extent of the line, as well as the evidence before it of the expenditures and improvements already made, and the facilities for business possessed by the company. It would also take judicial notice of things generally known to the public, such as the general development of commercial interests and the increase of trade and travel, in determining the question of the propriety or importance of extending the proposed line of road. It is unnecessary, therefore, for us to discuss or determine in this case the point raised by the respondent's counsel in argument whether the legislature have in fact delegated, or could delegate, to the courts the power to determine in what cases the right of eminent domain may be exercised by a railway corporation, organized under and in pursuance of Gen. St. c. 34, tit. 1, with the powers thereby granted; in other words, to determine whether such corporation may be permitted to prosecute the enterprise for which it was organized. This is not considered.

Whether, however, the use for which lands are sought to be taken in such cases is a public use, and whether they are reasonably necessary or required therefor by the corporation, or whether a proposed public use would be inconsistent with or subversive of a prior public use to which particular lands sought to be appropriated had already been dedicated,—these are undoubtedly questions for the court, and, so far as the determination thereof may affect the prosecution of a

proposed enterprise, it will, to that extent, be under the control of the court. *Rensselaer, etc., R. Co.* v. *Davis,* 43 N. Y. 137; *In re New York Cent. & H. R. R. Co.* v. *Metropolitan Gas-Light Co.,* 63 N. Y. 326; *In re New York Cent. R. Co.,* 66 N. Y. 407; *St. Paul Union Depot Co.* v. *City of St. Paul,* 30 Minn. 359.

3. The answer to the petition states that certain other lots embraced therein, and adjoining the grounds occupied by the university, though appearing of record to be owned by one of the regents individually, are in fact the property of the university. This was denied by the petitioner, and was not established upon the hearing. As respects the university, therefore, no cause was shown why such lands might not be taken. The regents, however, insisted that they were entitled to show, and accordingly offered to show, that if the road were constructed on the line proposed, it would injuriously affect property of the university required for public use, though not actually taken or appropriated by the respondent in these proceedings, and would greatly impair its usefulness for educational purposes. The evidence offered was excluded, and the ruling of the court is assigned for error. We think the court ruled correctly. The mere fact that the lots in Regents' addition belonged to the university gave the state or regents no standing in court to raise such question. For the purposes of the petition, lands not embraced therein, or connected with other lands sought to be condemned as part of one entire tract, are not to be deemed affected by the proceedings, so as to authorize the owners thereof to appear and object to the propriety of granting the petition. By section 15, chapter 34, a notice stating the object of the petition, and containing a description of the lands proposed to be taken, is to be served on every person named as owner, incumbrancer, tenant, or otherwise interested therein. And under section 17, the issue as to each party respects the lands described which he owns or is interested in. See, also, section 18. A. cannot object that B.'s lands are taken, nor raise an issue as to other separate and independent lots or parcels of land belonging to him, not described in the petition nor included in the proposed improvement, since his rights and interests in such lands are not affected by the condemnation proceedings. We think, therefore, that the court properly declined

to consider in these proceedings the alleged injuries to outside lands incident to the operation of the proposed road.

Order affirmed.