(June 27, 1916.)

## BLACKWELL LUMBER COMPANY, a Corporation, Respondent, v. EMPIRE MILL COMPANY, a Corporation, Appellant.

[158 Pac. 792.]

EMINENT DOMAIN—JUDGMENT OF CONDEMNATION—APPEAL—STAY OF PROCEEDINGS.

1. While an appeal in a condemnation suit does not operate to stay proceedings under the provisions of the Code of Civil Procedure governing and regulating appeals from district courts to the supreme court, secs. 9 and 13, art. 5, of the constitution invest this court with discretionary power in the matter of the issuance of such writs as it may deem to be expedient, in the exercise of its appellate jurisdiction, including the power to order a stay of proceedings in such a case when, in the opinion of the court, the ends of justice will be best subserved thereby.

[As to who may appeal or bring *certiorari* in eminent domain proceedings, see note in **Ann. Cas. 1914D, 1139.**]

APPLICATION of appellant for an order staying proceedings pending the determination of appeal. Demurrer and motion to dismiss the application. *Overruled.*

C. W. Beale and Chas. L. Heitman, for Appellant.

The jurisdictional right to continue in force the restraining order issued in this case cannot be doubted or questioned, since it is specifically authorized and granted by sec. 9, art. 5, Idaho constitution. (*Chemung Min. Co. v. Hanley*, 11 Ida. 302, 81 Pac. 619.)

The good faith of this appellant and the organizers of the Shoshone railway cannot be impugned or inquired into in this case. (*Connolly v. Woods*, 13 Ida. 591, 596, 92 Pac. 573.)

Upon the proposition of the right of the appellant to transfer its appropriation and land to the Shoshone railway, we cite 2 Lewis on Eminent Domain, sec. 859; *Crolley v. Minneapolis & St. L. Ry. Co.*, 30 Minn. 541, 16 N. W. 422.

It is immaterial for the purpose of this litigation whether the title to this strip of land stood in the name of the appellant or of the Shoshone railway, inasmuch as it furnishes the only way and means by which the timber of the appellant can be marketed. (*State v. Superior Court,* 65 Wash. 129, 117 Pac. 755.)

John P. Gray, C. H. Potts and W. F. McNaughton, for Respondent.

Sec. 5226, Rev. Codes, is constitutional, and the proceeding is therein set forth whereby upon the appointment of the commissioners and the assessment of damages the condemnor may enter in the possession of the property sought in behalf of the public use without waiting for the termination of any litigation that may be instituted. (*Portneuf Irr. Co. v. Budge,* 16 Ida. 116, 100 Pac. 1046, 18 Ann. Cas. 674.)

In the case of *McLean v. District Court,* 24 Ida. 441, Ann. Cas. 1915D, 542, 134 Pac. 536, this same section of the statute was given very careful examination by the court to ascertain whether or not it accomplished the purpose for which it was designed.

MORGAN, J.—This case has heretofore been before this court upon appeal from a judgment of dismissal made and entered upon the refusal of the above-named respondent (appellant in that case) to further plead after a demurrer to its complaint had been sustained. (*Blackwell Lumber Co. v. Empire Mill Co.,* 28 Ida. 556, 155 Pac. 680.) The decision of the trial court was reversed and the cause remanded for further proceedings. A trial has been had and judgment condemning sufficient land for a right of way for a temporary logging railroad and appointing commissioners to assess the damages appellant will suffer, by reason of the condemnation and appropriation, has been entered, from which an appeal is now pending in this court.

The case is before us now upon appellant's application, supported by an affidavit, for an order staying all proceedings pending the determination of the appeal, from which it

appears that appellant contends it had, prior to the commencement of this action, acquired and dedicated to use for railroad purposes the land sought to be taken from it by respondent, and that, subsequent to the commencement of the action, it had deeded a right of way over the land to a corporation organized for the purpose of constructing and operating a common carrier railroad thereon; that the use to which the last-mentioned corporation intends to put the land is a greater and more necessary public use than is that to which respondent proposes to apply it, and that this action cannot, therefore, be successfully maintained.

Respondent demurred to and moved to dismiss the application upon the ground that neither it nor the affidavit filed in support of it states facts sufficient to constitute a cause of action or any ground for relief; that this court is without jurisdiction to entertain the proceeding or to grant the relief applied for, and that a stay of proceedings is not authorized by law in a condemnation suit during the pendency of an appeal to the supreme court.

Counsel for respondent cites and relies upon the case of *McLean v. District Court*, 24 Ida. 441, Ann. Cas. 1915D, 542, 134 Pac. 536, wherein it was held, and we believe correctly, that an appeal in a condemnation suit does not operate to stay proceedings under the provisions of our Code of Civil Procedure. While it may be conceded that no stay has been provided for or even intended by the legislature in cases of this kind, it must also be conceded that the constitution invests this court with considerable discretionary power in the matter of the issuance of such writs as it may deem to be expedient in the exercise of its jurisdiction, and prohibits the legislature from interfering with that power. Sec. 9, art. 5, of the constitution is as follows:

"The supreme court shall have jurisdiction to review, upon appeal, any decision of the district courts, or the judges thereof. The supreme court shall also have original jurisdiction to issue writs of *mandamus, certiorari*, prohibition, and *habeas corpus;* and all writs necessary or proper to the complete exercise of its appellate jurisdiction."

In sec. 13, art. 5, it is provided: "The legislature shall have no power to deprive the judicial department of any power or jurisdiction which rightfully pertains to it as a co-ordinate department of the government; but the legislature shall provide a proper system of appeals, and regulate by law, when necessary, the methods of proceeding in the exercise of their powers of all the courts below the supreme court, so far as the same may be done without conflict with this constitution."

Had the legislature sought to expressly prohibit the issuance of an order of this court staying proceedings upon appeal in condemnation cases (which it has not attempted to do), its effort in that behalf would have been in conflict with the foregoing provisions of the constitution and ineffectual.

Since the construction of respondent's logging railroad upon the land in controversy will involve considerable useless expense, in the event its right to do so is not finally sustained, and since it is the intention of this court to hear the appeal of this case at its forthcoming term, to be held at Coeur d'Alene in August of this year, and to speedily dispose of it, to the end that if respondent's claim of right to appropriate the land is sustained no very great delay will result from our action in this behalf, we have concluded to overrule the demurrer and motion to dismiss and to continue in full force and effect the order heretofore made staying proceedings in this case, and it is so ordered.   Costs will abide the result of the appeal.

Sullivan, C. J., concurs.

BUDGE, J., Dissenting.—I find myself not in accord with the majority opinion, and am forced to dissent from the conclusions reached.

The facts stated in the majority opinion, so far as they relate to the case of *Blackwell Lumber Co. v. Empire Mill Co.*, reported in 28 Ida. 556, 155 Pac. 680, are correct.   This case, however, has been in this court before, and will be found reported in *Empire Mill Co. v. District Court of Eighth Judicial District,* 27 Ida. 383, 149 Pac. 499, and *Empire Mill Co. v.*

*District Court of First Judicial District,* 27 Ida. 400, 149 Pac. 505.

From an investigation of the various appeals that have been taken by the Empire Mill Co. involving the subject matter of this litigation, it will appear that in February, 1915, the Blackwell Lumber Co. instituted an action in condemnation against the Empire Mill Co. for the purpose of condemning a strip of land across three forty-acre tracts of land owned by the Empire Mill Co. for the construction of a temporary logging railroad, to transport from the lands of the Blackwell Lumber Co. large quantities of timber to its mills to be manufactured into lumber.

The Blackwell Lumber Co., it appears, is the owner of about four hundred acres of timber lands situated at the head of a gulch down which it proposes to construct said logging railroad.   It also appears that on this four hundred acres of land there is a large amount of white pine and mixed timber now standing which is ripe and ready for market; that there has also been cut on said timber land in the neighborhood of one and one-half million feet of timber which, unless removed, will materially deteriorate, if not become wholly valueless; that the only way this timber can be removed, transported and manufactured is over a railroad to be constructed down the gulch located on the land of the Empire Mill Co. which is sought to be condemned by the Blackwell Lumber Co. for said right of way; and that a portion of said temporary logging railroad has already been constructed over lands adjoining the land of the Empire Mill Co. and over a portion of land of the Empire Mill Co., leaving but a short distance still to be constructed in order to make it possible to transport the timber already cut and that growing on the lands of the Blackwell Lumber Co.

When this case was brought to this court in the first instance (27 Ida. 383, 149 Pac. 499, and 27 Ida. 400, 149 Pac. 505), it was for the purpose, mainly, of having determined the question of whether, in the absence of all of the officers of the Empire Mill Co. from the state of Idaho, service of summons could be legally made under the provisions of secs.

5226, 4890 and 5228, Rev. Codes. This question was determined by this court in favor of the Blackwell Lumber Co., the court holding in substance that in the absence of all the officers of a corporation from the state, substituted service in an action for condemnation was valid.

The next question presented to this court in this litigation arose upon demurrer to the sufficiency of the complaint in the case of *Blackwell Lumber Co. v. Empire Mill Co.*, 28 Ida. 556, 155 Pac. 680. The Empire Mill Co. contended in that case that the use sought, namely, the condemnation of the land described in the complaint of the Blackwell Lumber Co. for the purpose of constructing a temporary logging railroad, was not a public use authorized by law, and that therefore the Blackwell Lumber Co. had no right to condemn the lands. In a majority opinion this court held that the use was a public one, as recognized by the constitution of this state; that the provisions of the constitution were self-executing, and that the Blackwell Lumber Company had the right, upon a proper showing, under the constitution and laws of this state, to condemn the land described in its complaint, for the purpose of constructing a temporary logging railroad. The cause was thereupon remanded to the district court, with directions to overrule the demurrer and require the Empire Mill Co. to answer.

The Empire Mill Co. then filed its answer denying the necessity for the condemnation, and setting up the incorporation of the Shoshone Railway Co. (which corporation was organized immediately prior to the handing down of the opinion of this court in the case of *Blackwell Lumber Co. v. Empire Mill Co.*, 28 Ida. 556, 155 Pac. 680), and the transfer to it of the right of way sought by the Blackwell Lumber Co., and alleging that the land sought to be condemned had already been appropriated to a public use. Notice was thereupon given by the Blackwell Lumber Co. for the appointment of commissioners to assess and determine the damages that might accrue to the Empire Mill Co. by reason of the condemnation and appropriation of the land described in the complaint of

the Blackwell Lumber Co. A hearing was had at Wallace upon the issues joined in the complaint and answer on April 11, 1916. Both parties offered their proof, and, after a full hearing, the district judge made and entered findings of fact, conclusions of law, and judgment in favor of the Blackwell Lumber Co.

Three commissioners were duly appointed to assess damages, and qualified on May 4, 1916, and gave written notice designating May 15, 1916, to hear testimony for the purpose of ascertaining the amount of damages that would be sustained by the Empire Mill Co. by reason of the condemnation and appropriation of the land described in plaintiff's complaint. The hearing was by agreement adjourned until May 25, 1916.

Before this last date, the attorneys for the Empire Mill Co. served and filed their notice and gave their undertaking on appeal from the judgment of the district court, and instituted this proceeding before this court, for the purpose of obtaining an original order enjoining the commissioners so appointed from assessing and appraising values and damages in the condemnation proceedings involved in this action.

On May 22, 1916, a temporary order of this court was issued enjoining the commissioners from proceeding to assess and appraise values and damages in this proceeding; and the Blackwell Lumber Co. was directed to show cause before this court at the courtroom thereof at Lewiston, Idaho, on June 3, 1916, why a restraining order should not be issued pending the final hearing and determination of the appeal to this court, restraining the Blackwell Lumber Co. from taking any further action in or prosecuting the condemnation proceedings further, and enjoining the commissioners appointed by the trial court from assessing and appraising values and damages in the condemnation proceedings, or in the hearing of testimony, or making an examination of the lands sought to be so condemned, or from making any report or awarding any damages.

On June 3, 1916, the Blackwell Lumber Co., by its attorneys, filed its demurrer to the application of the Empire Mill Co.,

upon which said temporary injunction enjoining further proceedings by the commissioners for the purpose of determining values and damages had theretofore issued, and moved to dismiss said application and quash and vacate said temporary restraining order, upon the ground that neither the application nor the affidavit filed in support thereof stated facts sufficient to constitute a ground for the relief sought by the Empire Mill Co., and urged that this court was without jurisdiction to entertain the proceedings or to grant the relief applied for, and that a stay of proceedings as sought by the Empire Mill Co. was not authorized by law in a condemnation suit during the pendency of an appeal to the supreme court.

I have set out at length the main facts leading up to the issuance of the restraining order now under consideration, for the reason that in my opinion the conclusions reached in the majority opinion of this court are of grave importance to not only the profession, but to the citizens of the state generally, in view of the fact that the proceedings leading up to and the issuance of the restraining order in this case are new to our practice.

From a reading of the majority opinion, it would appear that the issuance of the restraining order was based principally upon the contention made by the Empire Mill Co. that the land sought to be appropriated by the Blackwell Lumber Co. for a temporary logging railroad had, subsequent to the commencement of the action of the Blackwell Lumber Co. for condemnation, been conveyed to the Shoshone Railway Company, a common carrier railroad, and the use to which the last-mentioned corporation intends to put the land sought to be condemned is a greater and more necessary public use than is that to which respondent proposes to apply it, and that if this is found to be true, the construction of the temporary logging railroad by the Blackwell Lumber Co. might involve considerable useless expense on the part of that company. This expenditure, however useless, must be borne by the Blackwell Lumber Co., which is urging no objection. It therefore is only fair to presume that that company is willing to incur

whatever hazard may be necessary in order to have an opportunity of moving their timber.

This contention, however, is met by the findings of the trial court upon which its judgment was based, wherein, among other things, it was found that "The use to which said property sought to be condemned is to be applied, to wit, for a right of way for said temporary logging railroad, is a public use authorized by law, and that the property sought to be condemned is not already appropriated to a railroad use by the defendant or any other person or company, and is not appropriated to any public use, . . . . and no part of said land has been appropriated by the Empire Mill Co. or any other person or company prior to the commencement of this action. That the Shoshone Railway Company, by virtue of its organization and the transfer to it of a portion of said right of way herein described, did not defeat or affect plaintiff's right to condemn said lands for right of way purposes, or affect the necessity for plaintiff to take and condemn said lands in order to remove and manufacture its said timber on its said lands described in this complaint." In my opinion the findings of the trial court in this respect should have been sustained by this court. And they should have controlled its decision at least until a final determination of this cause.

The only object to be attained by the appointment of commissioners to assess damages is that a speedy determination of the amount of damages sustained by reason of the appropriation of the land sought to be taken for a public use may be ascertained in the manner prescribed by law. Sec. 14, art. 1, of the constitution provides that "private property may be taken for public use but not until just compensation to be ascertained in a manner prescribed by law shall be paid therefor."

In the case of *Portneuf Irr. Co. v. Budge,* 16 Ida. 116, 100 Pac. 1046, 18 Ann. Cas. 674, it was contended that sec. 5226, Rev. Codes, was unconstitutional, in that it attempted to permit the taking of private property without due process of law. This court in the course of its opinion in that case said: "It must be remembered that the constitution of this state author-

izes the taking of private property for public use upon payment of a just compensation 'to be ascertained in a manner prescribed by law.' As we view it, the only question to be determined under this constitutional provision is this: Does section 5226 prescribe a manner for determining the 'just compensation' to be paid for plaintiff's property? The constitution might have said that this compensation shall be determined by a jury as is done in some states. (15 Cyc. 873, and cases cited.) But our constitution has not done so. It rather said that compensation shall be determined 'in a manner prescribed by law.' The legislature has prescribed a method for establishing the 'just compensation' to be allowed. The trial court has proceeded in harmony with the provisions of the statute [which is true in the case at bar]. Now, it is argued by the plaintiff that after the fixing of this compensation by the commissioners and payment of the same to the plaintiff or into court for its benefit, possession may be taken and the property wasted, despoiled and ruined, and that thereafter the condemnation proceedings may be dropped or may terminate in favor of the land owner, in which event it will receive nothing for the damages and waste committed during the occupancy. That argument is successfully answered by the statute itself. The damages that will be sustained by the taking will be assessed by the commissioners before the entry upon the property by the company. The land owner will have the privilege and right of actually receiving that compensation in cash before the entry is made. If the company should ultimately fail in the proceeding, or should not prosecute the proceeding further, the land owner will still have the legal title to his property and also the value of the property as assessed by the commissioners.''

It will therefore be seen that the taking of the land by the Blackwell Lumber Co. for the purpose of constructing a temporary logging railroad is authorized by law. (*Blackwell Lumber Co. v. Empire Mill Co.*, 28 Ida. 556, 155 Pac. 680.) Sec. 14, art. 1, of the constitution authorizes the taking of private property for a public use upon payment of a just compensation therefor to be ascertained in a manner prescribed

by law.  And sec. 5226, Rev. Codes, prescribes the method of ascertaining the compensation.  This section also provides that upon payment of such compensation, immediate possession of the premises may be had.

The case of *McLean v. District Court*, 24 Ida. 441, Ann. Cas. 1915D, 542, 134 Pac. 536, which involved sec. 5226, *supra,* is, I think, squarely decisive of the case at bar, conceding for the time being that this court had jurisdiction to issue the restraining order herein.  In that case the defendant appealed from the *in limine* judgment and came before this court with an application for a writ of prohibition restraining further proceedings with reference to the hearing and assessment of the damages by the commissioners, on the ground that the proceedings ought to be and were stayed pending an appeal from the judgment.  And again upon that phase of the section this court, after an exhaustive examination of the authorities, rendered its opinion holding that the object the legislature had in view was to provide means whereby the condemnor might not be held up pending vexatious litigation, whether or not there was an appeal from the judgment of the district court finding the right in plaintiff to condemn and to appointment of commissioners; that the appeal would not destroy the purpose of the section, but that the condemnor had the right to a hearing before the commissioners and the occupation of the premises sought to be taken notwithstanding the appeal; and that the appeal in no way stayed the proceedings.

It is clear, therefore, from the decisions of this court heretofore cited, that an appeal from the judgment of the court does not stay the proceedings of the commissioners in ascertaining the damages that will be sustained by reason of the condemnation and appropriation of the lands sought to be taken.  And after the amount of damages is ascertained by the commissioners and the money paid to defendant or deposited in court for his acceptance or rejection, the plaintiff is entitled to be let into possession and to the use of the property until the final conclusion of the litigation.

To grant a temporary injunction as has been done in this case is to defeat and nullify the provisions of sec. 5226, Rev.

Codes, so far as the right to the use and the possession of the property sought to be taken is concerned. By such injunction this court indirectly prevents what the legislature in express terms intended to permit. For this action there is no authorization under the statute, and clearly, to my mind, it is beyond and in excess of the jurisdiction of this court.

I do not think that sec. 9, art. 5, or sec. 13, art. 5, of the constitution has any application to the facts of the case at bar.

The result of the holding in the majority opinion of this court means that one and one-half million feet of valuable timber now cut and lying on the ground of the Blackwell Lumber Co. must remain there and be permitted to become wholly or partially destroyed; and the balance of the valuable ripe timber become less valuable. Thus one of the material resources of the state is impaired, to the irreparable loss of the Blackwell Lumber Co. and others directly or indirectly engaged in the lumber business, and no particular benefit is conferred upon the Empire Mill Company thereby.

If in ordinary actions to condemn for right of way or other public purposes, instituted under the statutes by corporations, municipalities or individuals, the withholding of the possession of the property sought to be so taken—which is expressly given by statute—by the issuance of extraordinary writs of injunction secured under anomalous proceedings is to be the established practice in the appellate court of this state, I cannot lend it my indorsement.

In my opinion the demurrer to the petition should be sustained and the alternative writ heretofore issued quashed, and the writ denied.